Jennipher FORTE, Individually and on Behalf of the Estate of Jeffrey Barcus, Appellants–Plaintiffs,

v.

CONNERWOOD HEALTHCARE, INC., et al., Appellees–Defendants.

No. 49A02–9807–CV–561.

Court of Appeals of Indiana.

Dec. 14, 1998.

Scott A. Benkie, Douglas A. Crawford, Benkie & Crawford, Indianapolis, for Appellants–Plaintiffs.

Patricia Polis McCrory, Sandra S. Carr, Harrison & Moberly, Indianapolis, for Appellees–Defendants.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Jennipher Forte ("Mother"), individually, and on behalf of the Estate of her deceased son, Jeffrey Barcus, brings this interlocutory appeal of the trial court's grant of partial judgment on the pleadings with respect to Mother's claim for punitive damages in her lawsuit against Appellee–Defendant Connerwood Healthcare, Inc. ("Nursing Home"). We reverse.

### Issue

Forte raises two issues which we restate and consolidate as:

> Whether the trial court erred in entering judgment in favor of Nursing Home with respect to Mother's individual claim for punitive damages associated with her common law claim for the loss of her child's services.[1]

### Facts

The evidence most favorable to the nonmovant Mother reveals that her son was admitted to Nursing Home on October 2, 1995. (R. 18). Over the course of the next seven days, Nursing Home committed several negligent acts and omissions which caused the son's death on October 9, 1995. (R. 17–23). Mother has documented that Nursing Home had exhibited a significant history and pattern of providing substandard and neglectful patient care. (R. 42).

■■ Mother filed the instant lawsuit on her own behalf, individually, and on behalf of her son's estate. (R. 17–23). Mother amended her complaint to include a claim for punitive damages alleging that Nursing Home's negligence was willful and wanton.

(R. 42). Nursing Home moved for partial judgment on the pleadings with respect to the issue of punitive damages. (R. 50–52). The trial court granted the motion finding that punitive damages are not allowed under the wrongful death statute. (R. 115–16).[2] This appeal ensued.

### Discussion and Decision

#### A. Standard of Review

As stated in *Schuman v. Kobets*, 698 N.E.2d 375 (Ind.Ct.App.1998), *trans. pending*:

> Pursuant to Ind. Trial Rule 12(C), the trial court may grant a motion for judgment on the pleadings if a review of the pleadings establishes that no material issue of fact exists and the movant is entitled to judgment as a matter of law. A motion for judgment on the pleadings tests the sufficiency of the complaint to state a redressable claim, not the facts to support it. The test to be applied is whether the allegations of the complaint, taken as true and in the light most favorable to the nonmovant and with every intendment regarded in her favor, sufficiently state a redressable claim. The party moving for judgment on the pleadings admits, for purposes of the motion, all facts well-pleaded and the untruth of any of his own allegations which have been denied. When the pleadings present no material issues of fact, and the facts shown by the pleadings clearly entitle a party to judgment, the entry of judgment on the pleadings is appropriate.

*Id.* at 377–78. (citations omitted).

#### B. Punitive Damages in Wrongful Death Cases

■■ At common law, there was no liability in tort for killing another person because

1. We wish to make perfectly clear that we have no quarrel with the dissent's contention that Indiana courts have held that punitive damages are not available "in an action for the death of a child." (dissent at 14, 18). As explained below, we hold only that, under the appropriate circumstances, punitive damages associated with a parent's independent common law claim for the loss of a child's services, which accrue before the child's death, may be recovered.

2. Although trial court findings entered in summary proceedings aid appellate review, they are not binding upon this court. *Althaus v. Evans-*

*ville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct. App.1993) (summary judgment); *Indiana Department of Natural Resources v. Hensley*, 661 N.E.2d 1246, 1250 n. 1 (Ind.Ct.App.1996) (motion to dismiss).

The adult wrongful death statute, formerly codified at Ind.Code § 34-1-1-2, has been recodified at Ind.Code § 34-23-1-1. P.L. 1-1998, § 18 (effective July 1, 1998). Similarly, the child wrongful death statute, formerly codified at Ind. Code § 34-1-1-8, has been recodified at Ind.Code § 34-23-2-1. P.L. 1-1998 § 18 (effective July 1, 1998).

actions for personal injury did not survive the death of the injured party. *Ed Wiersma Trucking Co. v. Pfaff,* 643 N.E.2d 909, 911 (Ind.Ct.App.1994), *adopted,* 678 N.E.2d 110. Thus, wrongful death actions are purely creatures of statute. *Id.* Because wrongful death statutes were enacted in derogation of common law, they must be strictly construed. *Wolf v. Boren,* 685 N.E.2d 86, 88 (Ind.Ct. App.1997), *trans. denied; Andis v. Hawkins,* 489 N.E.2d 78, 81 (Ind.Ct.App.1986), *trans. denied.* Therefore, only those damages prescribed by statute may be recovered. *Id.* Accordingly, Indiana courts have thus far held that punitive damages are not recoverable under the statutes governing wrongful death actions. *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1056 (Ind.Ct. App.1990) (adult wrongful death statute); *Andis,* 489 N.E.2d at 83 (child wrongful death statute).[3]

### C. Punitive Damages Associated with Spouse's Loss of Consortium

In *Rogers,* 557 N.E.2d 1045, although we held that punitive damages were not recoverable under the adult wrongful death statute; we nevertheless held that:

The question of whether punitive damages may be recovered on a spouse's loss of consortium claim, as opposed to one made

3. We wish to express our surprise that the Indiana judiciary has permitted the law in this area of great public importance to have been developed primarily in federal court decisions. "It was held in a 1979 federal case that the Indiana Wrongful Death Act does not authorize punitive damages." 10 I.L.E. *Death* § 61 at 63 (1983) (citing *Huff v. White Motor Corp.,* 609 F.2d 286, 297 (7th Cir.1979)); *See also DeHoyos v. John Mohr & Sons,* 629 F.Supp. 69, 74–76 (N.D.Ind.1984). But, the *Huff* court based its decision on the erroneous assumption that the question had already been decided by the Indiana courts. The *Huff* court framed the issue as whether a 1965 amendment to Indiana's wrongful death statute changed existing Indiana law to permit punitive damages in wrongful death cases. 609 F.2d at 297. The *Huff* court stated:

As plaintiff acknowledges, prior to the amendment punitive damages were not recoverable because the sole purpose of the statute was to compensate wrongful death claimants for pecuniary loss occasioned by the wrongful death. *See, e.g., Lindley v. Sink,* 218 Ind. 1, 14–15, 30 N.E.2d 456, 461 (1940).

However, from our reading, *Lindley* in no way addressed the issue of the availability of punitive damages under Indiana's Wrongful Death Act. Moreover, we have not been directed to, nor are we aware of, any Indiana case preceding *Huff* which addressed this precise question. Thus, *Huff* constitutes the basis of Indiana law in this area. *See Andis,* 489 N.E.2d 78, 81 (adopting the rationale of *Huff* as persuasive); *Rogers,* 557 N.E.2d at 1056 (relying on *Andis* for the proposition that punitive damages are not recoverable in wrongful death actions).

Although the court in *DeHoyos,* 629 F.Supp. at 74–76, rejected the plaintiffs' claim for punitive damages based upon *Huff* and "the interpretation and strict application of Indiana's wrongful death statute," the *DeHoyos* decision may nevertheless be fairly read as questioning the correctness of *Huff.* The *DeHoyos* court pointed out that 1) Indiana common law has historically permitted the recovery of punitive damages under the appropriate circumstances, 2) the wrongful death statute, Ind.Code § 34–1–1–2, permits an action whenever the decedent 'might have maintained an action had he or she ... lived;' 3) the wrongful death statute's list of damages is expressly nonexclusive (*"including but not limited to"*); 4) Indiana courts [at that time] had only interpreted the wrongful death statute as limiting the types of compensatory damages available; and 5) punitive damages are not compensatory damages. 629 F.Supp. at 74–76 (emphasis original).

Perhaps one reason that Indiana courts did not earlier address the question of whether punitive damages could be recovered in a case resulting from a child's death may be explained by the attitude reflected in the following passage:

Punitive damages [in child wrongful death cases] will receive only passing mention. The author feels the concept is inappropriate at best, barbaric at worst. Its place, if one it has, is in the dim past along with corporal punishment and trial by ordeal. The possibility of punitive damages as a deterrent is nebulous. Its apparent aim at punishing a wrongdoer rather than compensating a victim is misdirected. The wrongdoer usually suffers more than enough from having killed a child....

Leonard Decof, *Damages in Actions for Wrongful Death of Children,* 47 Notre Dame Lawyer 197, 205 (1971). However, even this commentator went on to state:

A reasonable application of punitive damages would be in the special instances where public utilities, hazardous enterprises, public carriers, etc., are involved. These sophisticated defendants could conceivably be made to conduct their activities in a more careful manner by an awareness of punitive damages. Another reasonable application of punitive damages would be in the instance of intentional tort or gross or wanton negligence. However, even in these instances, punitive damages should be in addition to and not in substitution of other damages.

*Id.*

on behalf of a decedent's estate under the wrongful death statute, has never been decided in Indiana. We hold a claim for punitive damages may be appropriately asserted by [plaintiff] in her individual capacity under these facts.

The purpose of punitive damages is not to compensate or reward the plaintiff; it is to penalize a defendant. The issue is whether the defendant's conduct is so obdurate that it calls for an assessment of punitive damages. If [decedent] were alive to press his own personal injury claims, punitive damages would be available to him if he established Defendants' acts rose to the requisite level of culpability. His death precludes this outcome. It would be anomalous to allow [decedent's] death to insulate Defendants from liability for punitive damages when his widow claims them independently of the wrongful death statute.

Therefore, the trial court properly granted summary judgment on the wrongful death claim to the extent the judgment denies [decedent's] estate punitive damages. However, it erred in so doing to the extent it granted judgment on [plaintiff's] individual claim for punitive damages associated with her alleged loss of consortium. *Id.* at 1056–57 (citations and footnote omitted).

### D. Common Law Claim for Loss of Services of Child

 A wrongful act resulting in an injury to a minor child gives rise to a common law cause of action in favor of the parent for the loss of the child's services. *Boyd v. Blaisdell*, 15 Ind. 73, 75–76 (1860); *Buffalo v. Buffalo*, 441 N.E.2d 711, 714 (Ind.Ct.App.

1982). When the act of the wrongdoer which deprives the parent of the services of her child causes the child's death, the parent may recover for the services of the child from the time of the injury until his death, and may also recover any incidental damages the child may have suffered, such as medical attendance, care, and nursing up to that time. *Jackson v. Pittsburgh, C., C. & St. L. Ry. Co.*, 140 Ind. 241, 39 N.E. 663 (1895). At common law, "[a] parent might, and still may, without any [wrongful death] statute, recover for loss of services resulting from a wrongful injury to his child, during the period of disability occasioned by such injury, and, if death resulted, for the loss of services during the time intermediate the injury and death." *Mayhew v. Burns*, 103 Ind. 328, 2 N.E. 793, 794 (1885). In the case where death resulted from the wrongful act, the parent "could recover for loss of services from the date of the commission of the injury only to the date of the death of the son; but by [the wrongful death] statute we have 'added to the common-law remedy of a parent the right to recover all the probable pecuniary loss resulting from the death of a child.'" *Thompson v. Town of Fort Branch*, 204 Ind. 152, 178 N.E. 440, 442 (1931) (internal quotation from *Louisville, N.A. & C. Ry. Co. v. Goodykoontz*, 119 Ind. 111, 21 N.E. 472 (1889)).[4]

 Thus, the common law cause of action has survived and continues to provide a remedy for parents for the loss of their child's services up until the child's death. *See Jackson*, 39 N.E. at 663; *Thompson*, 178 N.E. at 442; *Mayhew*, 2 N.E. at 794. And, as the common law right of recovery ends at the child's death, the child wrongful death statute provides a parent with an additional remedy to recover damages, including the

---

4. The case of *Montgomery v. Crum*, 150 N.E. 393 (Ind.Ct.App.1926), *overruled on other grounds*, 199 Ind. 660, 161 N.E. 251, supports the proposition that a parent may recover punitive damages attendant to her claim for the loss of a child's services. In *Montgomery*, a mother won a judgment against her ex-husband and his relatives for $25,000.00 representing the damages the mother suffered as the result of the abduction of her child. The ex-husband had been convicted and sentenced to prison for the crime of stealing the child. 150 N.E. at 394–95. We held that the $25,000.00 award was excessive based upon the law in effect at the time that punitive damages were not available where the commission of a

wrong subjected the wrongdoer to both criminal prosecution and civil liability. *Id.* at 397. This rule of law has been abrogated by Ind.Code § 34-4-30-2 which provides that "[i]t is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission which gave rise to the civil action." P.L. 172–1984 § 2; *See Gosnell v. Indiana Soft Water Service, Inc.*, 503 N.E.2d 879, 880 (Ind. 1987) (holding that Ind.Code § 34-4-30-2, effective September 1, 1984, would not be given retroactive application). Thus, had the cause of action in *Montgomery* accrued after September 1, 1984, the award of punitive damages would, in all likelihood, have been affirmed.

damages related to the loss of the child's services, which pertain to a period of time after a child's death. *See* IND.CODE § 34–1–1–8(f) (now IND.CODE § 34–23–2–1(f)) (the child wrongful death statute provides that "[d]amages may be awarded ... *only* with respect to the period of time *from the death of the child* until [one of three later dates].") (emphasis added).[5]

▌ In the present case, Mother, having brought her lawsuit in her individual capacity as well as on the behalf of her son's estate, has stated a redressable common law claim for the loss of her son's services from the date of Nursing Home's first negligent

act or omission until the time of his death. As noted above, this common law remedy preceded, and survived the additional remedy provided by the wrongful death statute.[6] *See Mayhew,* 2 N.E. at 794; *Thompson,* 178 N.E. at 442.

Thus, based on *Rogers,* 557 N.E.2d at 1056–57, we hold that Mother has appropriately stated a redressable claim for punitive damages in her individual capacity under the present circumstances. Our decision aligns with *Rogers* in militating against the anomalous state of the law under the wrongful death statutes which allow death to insulate a defendant from liability for punitive damages.[7] *See id.*

5. Precisely because a parent's common law right of recovery for the loss of her child's services ends at the child's death, the conclusion reached by the dissent that the common-law claim for the loss of a child's services has been encompassed and incorporated within the child wrongful death statute is incorrect as a matter of law. As noted above, the child wrongful death statute was enacted in derogation of common law and must be strictly construed. *See Andis,* 489 N.E.2d at 81. Statutes enacted in derogation of common law must be strictly construed against limitations upon a claimant's right to bring a common law cause of action. *Scott v. City of Seymour,* 659 N.E.2d 585, 589 (Ind.Ct.App.1995). As discussed above, a parent's common-law action for the loss of a child's services permits recovery of damages *only* for a period of time *before* the child's death, and, the child wrongful death statute permits recovery *only* for a period of time *after* the child's death. Thus, contrary to the dissent's conclusion that the common law remedy has been encompassed and incorporated into the child wrongful death statute, the two remedies are mutually exclusive.

6. The dissent argues that Mother's claim for punitive damages has been cast "under the veritable umbrella of a loss of consortium claim." (dissent at 14). On the contrary, we in no way wish to confuse or equate a parent's common law claim for the loss of a child's services with a spouse's common law claim for the loss of consortium. These two claims are mutually exclusive as the former belongs to a parent and the latter belongs to a spouse. Obviously, the nature of the damages associated with the different causes of action are different. As aptly pointed out by the dissent, a spouse's claim involves the deprivation of sexual relations while a parent's claim does not. However, this element of damages which distinguishes a spouse's loss of consortium claim from a parent's loss of services claim does not somehow support the apparent conclusion reached by the dissent that a spouse's common law claim for the loss of consortium has survived the adoption of Indiana's wrongful

death statutes while the parent's common law claim for the loss of a child's services has not. It is well-established that Indiana common-law permits the recovery of punitive damages under the appropriate circumstances. *See G & N Aircraft, Inc. v. Boehm,* 703 N.E.2d 665, 679–680 (Ind. App.1998) ($175,000.00 punitive damage award upheld for the breach of fiduciary duties owed to a minority shareholder where majority shareholder attempted to force the minority shareholder to sell his shares for $250,000.00 where the trial court placed the value of those shares at $521,319.00). It is inconceivable that the law of punitive damages will apply to punish those who violate the property rights of affluent businessmen and yet exempt from punishment those whose torts result in serious personal injuries to those most deserving of protection under the law, namely, innocent, powerless children.

7. Although we have repeatedly acknowledged that Indiana courts have held that punitive damages are not available in wrongful death cases, we are not blind to the anomalous, intolerable state of the law which allows the fortuitous circumstance of death to insulate a defendant from liability for punitive damages. *See Rogers,* 557 N.E.2d at 1056–57. It is widely recognized that this interpretation of the law which provides that it is cheaper to kill than to injure is "intolerable." *See* Prosser and Keeton, *Torts* (5th ed) § 127 at 945. Many states have now rejected the proposition that their legislatures could have intended this absurd result simply because a wrongful death statute did not expressly provide for the recovery of punitive damages. *See e.g., Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038, 1048 (Alaska 1986) (it is unlikely that a legislature would intend that a person injured by a negligent defendant may recover punitive damages, but that the estate of one killed by such a person may not, when the purpose of awarding punitive damages is deterrence); *Behrens v. Raleigh Hills Hospital, Inc.,* 675 P.2d 1179, 1185 (Utah 1983); *Berenger v. Frink,* 314 N.W.2d 388,

It is of no moment that the value of Mother's common law claim for her son's services may be of dubious pecuniary value under the present circumstances. In a parent's action based on the loss of her child's services, the actual rendition of services is immaterial. Alvin C. Johnson, *Pleading–Actions for Death of Minor Child–Damages*, 7 Ind.L.J. 505, 506 (1931). Under Indiana law, all damages attributable to a tort are compensable and, although the jury may not be required to award a substantial amount of damages in any particular case, it must award at least nominal damages. *Symon v. Burger*, 528 N.E.2d 850, 852 (Ind.Ct.App. 1988). An award of punitive damages may be sustained on the basis of nominal damages or upon the invasion of any legally protected interest. *Henrichs v. Pivarnik*, 588 N.E.2d 537, 544–45 (Ind.Ct.App.1992). After all, punitive damages are not compensatory in nature, but are designed to punish the wrongdoer and to dissuade him and others from similar conduct in the future. *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1022 (Ind.1986). Thus, when determining whether punitive damages should be imposed, the fact-finder must consider that the plaintiff has already been awarded all to which she was entitled to receive under the law, and that, an additional award of punitive damages is in the nature of a windfall. *Id.*

Furthermore, punitive damages are in no way automatic upon the fact-finder's determination that a defendant is liable in tort. *See Johnston v. State Farm Mutual Automobile Insurance Company*, 667 N.E.2d 802, 805. (Ind.Ct.App.1996), *trans. denied.* Punitive damages may be awarded only if there is clear and convincing evidence that the tortfeasor acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake or other human failing. *Id.* The sole issue in determining whether an award of punitive damages is appropriate is whether the defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Orkin*, 486 N.E.2d at 1022.

### Conclusion

Based on the above, we hold that the trial court properly granted judgment on the pleadings with respect to Mother's punitive damages claim brought on behalf of her son's estate under the wrongful death statute.[8] However, the trial court erred to the

---

391 (Iowa 1982); *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539, 545 (1981) (the deterrence principle of punitive damages is perfectly compatible with a wrongful death claim and perhaps even more appropriate in wrongful death actions than in actions for less severe injuries); *Martin v. United Security Services, Inc.*, 314 So.2d 765, 771 (Fla.1975) (difficult to accept the proposition that the legislature intended a tortfeasor to be punished for his malicious and reckless acts when they maim another but not for those same acts when they kill the victim); *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. 1973) (punitive damages are appropriate under a wrongful death statute [similar to Indiana's] which permits recovery for such damages as deceased himself might have recovered had he survived the injury and brought the action himself).

**8.** In so holding, we nevertheless disagree with the dissent that the question of the availability of punitive damages under the Indiana Wrongful Death Act "rests with the legislature 'to change the rule if it disagrees with the Court's constructions of its legislative enactments.'" (dissent at 17, citing *Miller v. Mayberry*, 506 N.E.2d 7, 11 (Ind.1987)). Most importantly, the above-quoted statement from *Miller* in no way pertains to the availability of punitive damages under the Act, but instead pertains to the well-established precedent that Indiana courts have interpreted the Act as limiting the type of *compensatory* damages available to pecuniary damages. *See id.* Additionally, we find the rationale stated in the concurring in result opinion authored by Chief Justice Shepard is unassailable. *Id.* at 12. Chief Justice Shepard stated:

> I do not believe that the separation of powers prohibits the judicial department from altering its view on the meaning of the statute. While there are many reasons why one might decline to cast aside an interpretation adopted long ago, that interpretation is still simply a matter of judicial construction. Judges should regard themselves as responsible for rules they have erected.

*Id.* We must honor our duty to scrupulously investigate the wisdom of our precedents established previously and if a rule announced in an opinion works an obvious injustice upon litigants and is not supported by reasonable authority, it should be eliminated from the body of precedents. *See New York, C. & St. L.R.Co. v. Henderson*, 237 Ind. 456, 146 N.E.2d 531, 537 (1957); *Morton v. Merrillville Toyota, Inc.*, 562 N.E.2d 781, 784 (Ind.Ct.App.1990); *McLochlin v. Miller*, 139 Ind.App. 443, 217 N.E.2d 50, 52 (1966). Finally, as noted earlier, our supreme court has never addressed the question of whether punitive damages are available under the Act. Obviously, it is the prerogative of our supreme court to reject an interpretation of a statute given

extent it granted judgment on the pleadings with respect to Mother's individual claim for punitive damages associated with her common-law claim for the loss of her child's services. *See Rogers,* 557 N.E.2d at 1057.

Reversed.

DARDEN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

As the trial judge so aptly noted in his order granting Connerwood Healthcare's motion for judgment on the pleadings, the legislature's amendment to IND. CODE § 34–1–1–8,[1] the Child Wrongful Death Act (the Act), neither changed nor modified the pecuniary loss rule with respect to wrongful death actions.

In my view, actions for the death of a child continue to be limited to pecuniary loss and cannot be extended to punitive damages. *See Miller v. Mayberry,* 506 N.E.2d 7, 10 (Ind.1987) ("recovery for the death of a minor child is limited to pecuniary loss only"); *see also Andis v. Hawkins,* 489 N.E.2d 78, 83 (Ind.Ct.App.1986), *trans. denied* (punitive damages may not be recovered in parents' actions for wrongful death of minor child); *see also Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1056 (Ind.Ct.App.1990) (punitive damages not recoverable in adult wrongful death claim). In *Andis,* this court observed that the damages recoverable in an action for the death of a minor child are "severely restricted ... to allow recovery only for the pecuniary loss sustained by the parents." *Andis,* 489 N.E.2d at 82. Moreover, the items of recoverable damages have been restricted more severely in child death cases than in adult wrongful death cases. *Id.* at 83.

Although the *Rogers* court permitted a spouse's request for punitive damages as part of an independent claim for loss of consortium, there is no corresponding common law claim for loss of consortium by a parent for the death of a child. As Forte bases her claim for punitive damages under the verita-

ble umbrella of a loss of consortium claim, our supreme court recognized in *Dearborn Fabricating & Eng'g v. Wickham,* 551 N.E.2d 1135, 1139 (Ind.1990), that the predominant element in the concept of consortium has been described as the "loss of the sexual relationship." *See also Barton–Malow Co., Inc. v. Wilburn,* 556 N.E.2d 324, 325 (Ind.1990). The *Dearborn* court observed that:

> There are significant differences between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital relationship ... [T]he spousal action rests in large part on the deprivation of sexual relations and the accompanying loss of childbearing opportunity, which does not exist as an element of damages in the child's action.

*Dearborn,* 551 N.E.2d at 1137. In light of the above, it is apparent to me that Indiana does not recognize an independent loss of consortium claim based on the death of a child.

Moreover, the Act enumerates specific items of recoverable damages in an action for the death of a child. In particular, claims for the "loss of the child's services, love and companionship" are included. I.C. § 34–1–1–8(e)(1) and (2). I would note that the amendment to the Act allowing for the recovery of a child's love and affection came in apparent response to *Andis* and *Miller v. Mayberry,* 506 N.E.2d 7 (Ind.1987), which specifically precluded the recovery of such damages because they were "not proper elements of damage in an action for the death of a minor child." *Andis,* 489 N.E.2d at 83. While the majority correctly points out that the common law authorizes recovery for the loss of a child's services in some circumstances, *slip op.* at 4–5, this particular claim is now specifically encompassed within the Act.

The item of punitive damages remains conspicuously absent from the Act. As our supreme court observed in *McKnight v. State,* 658 N.E.2d 559, 562 (Ind.1995), "when the

by this court which produces an absurd result. *See Barger v. State,* 587 N.E.2d 1304, 1306 (Ind. 1992) (strict construction of a penal statute).

1. Amended and recodified at IND. CODE § 34–23–2–1.

legislature enacts a statute in derogation of the common law, [courts] presume that the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication." Inasmuch as our legislature has had ample opportunity to include punitive damages in the Act since *Andis* and *Rogers,* and has not, it is apparent to me that the legislature has acquiesced in previous judicial interpretations denying recovery of punitive damages in actions for the death of a child. *See Miller,* 506 N.E.2d at 11 (legislature's failure to change a statute in light of judicial interpretation amounted to acquiescence in the construction given by the court). As a result, asserting a separate claim for these same damages under the guise of a common law cause of action is unnecessary.

I would also note that the viability of any independent common law claim seeking damages for the loss of a child's services is questionable and speculative at best in today's society. Gone are the days of the "family farm" or the "mom and pop" grocery where parents routinely depended upon their children to render the services necessarily required to economically sustain the familial unit. Moreover, in the particularly unfortunate circumstances presented here, it is virtually inconceivable to me that Forte might advance a successful claim for the loss of her child's services.[2]

There is yet another string to this bow in that unlike a common law claim for the loss of a child's services which are incorporated into the Act, a common law claim for spousal loss of consortium is not included in the Adult Wrongful Death Act. Therefore, it is my view that the *Rogers* court simply extended the pecuniary loss rule to recognize a claim for the recovery of punitive damages in that circumstance because the common law claim for loss of consortium is unique to the spousal relationship and was not included in the Adult Wrongful Death Act. In circumstances such as these which involve an injury and subsequent resulting death to a child, there is no allowance for the recovery of punitive damages by the parent in his or her own right. Rather, the right to recover such damages, until our legislature provides otherwise, inures only to the party directly injured. Thus, a parent's right to recovery is confined to pecuniary loss as dictated by the rationales espoused in *Andis* and *Miller.* It rests with the legislature "to change the rule if it disagrees with the Court's constructions of its legislative enactments or feels that there is a need to change that rule based on the needs or requirements of society." *Miller,* 506 N.E.2d at 11. I fully acknowledge Chief Justice Shepard's concurring opinion in *Miller* where he makes the point that courts of review are not foreclosed from altering their views with respect to certain issues if such action is warranted. By the same token, however, neither this court nor our supreme court will simply "cast away" long-standing precedent. In *Marsillett v. State,* 495 N.E.2d 699, 704 (Ind.1986), Chief Justice Shepard in writing for the majority observed as follows:

> Under the doctrine of *stare decisis,* this Court adheres to a principle of law which has been firmly established. Important policy considerations militate in favor of continuity and predictability in the law. Therefore, we are reluctant to disturb long-standing precedent which involves salient issues. [Citation omitted]. Precedent operates as a maxim for judicial restraint to prevent the unjustified reversal of a series of decisions merely because the composition of the Court has changed ... [Citation omitted].

Finally, I would note that the majority has tacitly acknowledged that punitive damages are not recoverable in actions involving the death of a child. *See slip op.* at 2, n. 1. To me, its effort in attempting to explain away such a firmly-established rule of law in a hair-splitting fashion may be likened to William Shakespeare's oft-quoted line from Hamlet: "The lady doth protest too much, methinks."

**2.** On October 2, 1995, Forte's son, age five, was admitted to the Anderson Health Care Center with a diagnosis of mental retardation, cerebral palsy, seizure disorder, spastic quadriplegia, tracheostomy, and gastric tube insertion. He died of respiratory failure nine days later. Appellant's Brief at 3.

As our legislature has not permitted the recovery of punitive damages with respect to actions involving the death of a child, I would affirm the trial court's order granting the defendants' motion for partial judgment on the pleadings; and respectfully dissent from the majority's effort to retrofit a remedy not provided by our legislature or recognized by our courts.